**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK  xx**

**DONALD A. VANDERVEER**
                          **v.**                                                   **#19-CV-3833 (FB) (CLP)**


**ZONING BOARD OF APPEALS TOWN OF EAST**
**HAMPTON, ZBA Chairperson JOHN P. WHELAN,**
**ZBA Vice Chairperson SAMUEL KRAMER, Members**
**of The Town of East Hampton Zoning Board of Appeals**
**ROY DALENE, THERESA BERGER and TIM**
**BRENNEMAN, Town of East Hampton Principal Building**
**Inspector ANN M. GLENNON, Assistant East Hampton**
**Town Attorney ELIZABETH L. BALDWIN, ESQ., and**
**TOWN OF EAST HAMPTON**
**_____xx**


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLANTIFF'S FED. R. CIV. P. 65 MOTION**

Respectfully submitted
/s/
Patricia Weiss, Esq.
78 Main Street – Suite 14
Post Office Box 751
Sag Harbor, NY 11963-0019
Telephone (631) 725-4486
Facsimile (631) 725-0295
PWESQSAG@AOL.COM

# TABLE OF CONTENTS

Introduction ……………………………………………………………….. 8

Subject Matter Jurisdiction ………………………………………………... 9

Temporary & Preliminary Injunction Standard ……………………………….. 14

Irreparable Injury ………………………………………………………….. 14

Likelihood of Success on the Merits ……………………………………… 15

Likelihood of Success on Due Process (Procedural & Substantive) …………… 15

*Mathews v. Eldridge* Factor #1: Property & Liberty Interests ……………….. 17

*Mathews v. Eldridge* Factor #2: Risk of Erroneous Deprivation/Safeguards… 21

The ZBA's Deliberate Failure to Afford Confrontation & Cross-Examination.21

The EH ZBA's prohibition of direct examination and cross-examination is inconsistent with some state guidelines albeit not contrary to any current state law about procedure or evidence…………………………. 21

The absence of an evidentiary rule allowing cross-examination is disproportionately disadvantageous to a landowner applicant compared to the ZBA's goal to resolve hearings in one evening session.24

No Guided Standards for the Terms "Commercial" & "Abandonment"…26

Constitutionally Flawed ZBA Determinations Are Not Correctable in NY.27

*Mathews v. Eldridge* Factor #3: Minimal Burdens of Rule Drafting & Cross-Examination…………………………………………………………………… 34

Likelihood of Success on Equal Protection……………………………….  35

Likelihood of Success on Takings Clause Claim ……………………………… 39

Vanderveer's need for an injunction *pendente lite* is not outweighed by Town's interest; an injunction is actually more beneficial to the public than current policy.40

A Qualified Immunity Defense is Unlikely to Be Successful…………………………. 41

Standards for Application of Qualified Immunity Doctrine………………………. 41

Qualified Immunity is Inapplicable in This Case………………………………. 41

Municipal Liability for the Town's Custom, Policy, Local Codes & Procedures……. 44

Conclusion ……………………………………………………………………46

# TABLE OF CITATIONS

## CASES

### FEDERAL

Armstrong v. Manzo, 380 U.S. 545 (1980) ….. 29

Askins v. Doe, 727 F.3d 248 (2d Cir. 2013) ….. 44-45

Bell v. Burson, 402  U.S. 535 (1971) …. 18, 22, 42

Bellamy v. City of New York, 914 F.3d 747 (2d Cir. 2019) … 45

Bledsoe v. City of Jacksonville Beach, 20 F. Supp.2d 1317 (M.D. Fla 1998) ..26

Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988) …… 10

City of Escondido v. Marty Emmons, 586 U.S. _ (2019) (1-7-19) …..41

Crawford v. Washington, 541 U.S. 36 (2004) ….. 21-22

Department of Commerce v. New York, __ U.S. _, SCOTUS #18-966 (6-27-19)…. 31-32

Doe v. Baum, 903 F.3d 575 (6th Cir. 2018)….. 22

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)…..13

Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir. 2012)…. 36

Ginaitt v. Haronian, 806 F. Supp. 311 (D. R.I. 1992) …. 16, 43

Goldberg v. Rocky Hill, 973 F.2d 70 (2d Cir. 1992) …. 42.

Grayned v. City of Rockland, 408 U.S. 104 (1972) …. 26

Green v. Mattingly, 585 F.3d 97 (2d Cir. 2009) ….. 13

Greene v. McElroy, 360 U.S. 474 (1959) …13

Hachamovitch v. DeBuono, 159 F.3d 687 (2d Cir. 1985)….. 14

Hawkins v. Costello, 460 F.3d 238 (2d Cir. 2006) …… 24

Hernandez v. Wells, No. 01 Civ 4376, 2003 WL 22772982, at
        *9 (S.D.N.Y. Nov. 24, 2003) (MBM) ….. 38

Hu v. The City of New York, _ Fed.3d __ (2d Cir. 2019) (6-13-19) ….. 36

Jeffries v. Harleston, 828 F. Supp 1066 (S.D.N.Y. 1993) ….. 19

Johnson v. U.S., 576 U.S. __ (2015) ….. 27, 42

Knick v. Township of Scott, __ U.S. ___ (2019) (SCOTUS #17-647 (6-21-19)… *passim*

Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002) ….. 9

LaTrieste Rest. & Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587 (2d Cir. 1994)..38

LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980) ….. 36

Lilly v. City of New York, __ F.3d ___ (2d Cir. 2019) (8-14-19) ….. 40

Mathews v. Eldridge, 424 U.S. 319 (1976) ….. *passim*

McDonough v. Smith, __ U.S. __ (2019) SCOTUS #18-485 (6-20-19)…..14-15

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ….. 14

Pabon v. Wright, 459 F.3d 241 (2d Cir. 2005) ….. 24, 42

Pennzoil v. Texaco, 481 U.S. 1 (1987)

Rooker-Feldman [doctrine] …. 13-14

Rothenberg v. Daus, __ Fed. Appx __ (2d Cir. 2012) (7-27-12) .. 42

Rippo v. Baker, ___ U.S. ___ (2017) …. 35

Ruston v. Town of Skaneateles, 610 F.3d 55 (2d Cir. 2010) …. 35

Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir. 1986) …. 12, 17, 20, 42

Scrimo v. Lee, ___ F.3d __ (2d Cir. 2019) (8-20-19) ….. 24

Sessions v. Dimaya, 584 U.S. ___ (2018) ….. 27, 42

Sprint Communications, Inc. v. Jacobs, 571 U.S. __ (2013) … 10, 13

Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998) …. 9

Texaco v. Pennzoil, 784 F.2d 1133 (2d Cir. 1986) … 32

Village of Euclid v. Amber Realty, 272 U.S. 365 (1926) …. 18

Village of Willowbrook v. Olech, 528 U.S. 562 (2000) …. 35, 36

Vitarelli v. Seaton, 359 U.S. 535 (1959) … 22

Walz v. Smithtown, 46 F.3d 162 (2d Cir. 1995)…. 39, 43

Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008) … 14

Zahra v. Town of Southold, 48 F.3d 674 (2d Cir. 1995)… 19, 44.

Zinermon v. Burch, 494 U.S. 113 (1990) ….. 9


**STATE**

Barron v. Getnick, 19 A.D.2d 1027 (4th Dept. 1985) ….. 19, 24

Cilla v. Mansi, Index #3563-02 (5-8-2002) 2002 NY Slip Op. 50208(U)
        2002 NY Misc. LEXIS 657(Thomas Whelan, J.) ….. 30, 43

Cook v. Union County Zoning Board of Adjustment,
        185 N.C. App. 582, 649 S.E.2d 458, 467 (N.C. 2007)…. 30

Fee v. Zoning Board of Appeals of the Town of East Hampton,
        2012 NY Slip Op. 32295 (U) (8-24-12) (Jones, Jr., J.) …. 33, 43

Knight v. Amelkin, 68 N.Y.2d 975 (1986) … 20, 23, 30, 34, 38, 42

Matter of Halperin v. City of New Rochelle, 24 A.D.3d 768 (2d Dept. 2005) ….. 30, 43

Matter of Haug v. SUNY Potsdam, 32 N.Y.3d 1044 (2018) …. 31, 32

Matter of Healy v. Town of Hempstead Bd. of Appeals,
        2018 NY Slip Op. 28261 (8-28-18) ….. 31

Matter of Marzella v. Munroe, 69 N.Y.2d 967 (1987) ….. 27, 43

People v. Golb, 23 NY 3d 455 (2014) ….. 32

Town of Islip v. P.B.S. Marina, 133 A.D.2d 81 (2d Dept. 1987) ….. 27, 43

Turturro v. Zoning Board of Appeals of the Town of Brookhaven, 2007 Slip. Op.
51633(U), 16 Misc. 3d 1129 (A) (8-27-07)  (Peter H. Meyer, J.) ….. 30, 43

**STATUTES & RULES**

Fed. R. Civ. P. 1 ….. 46

Fed. R. Civ. P. 65 … *passim*

42 U.S.C. § 1983 ….. *passim*

42 U.S.C. § 1988 …. 40

New York Civil Practice Law and Rules – Article 78 …………………….. *passim*

New York Criminal Procedure Law §510.40 (2) …… 15

New York Penal Law § 240.30(1) …. 32

**OTHER**

Salkin, Patricia E., "Abandonment, Discontinuance and Amortization of Nonconforming
Uses: Lessons for the Drafters of Zoning Regulations", Digital Commons at Touro Law
Center 2010… 25, 33, 43

Somin, Ilya, Federalism and Property Rights, 2011 U. Chi. Legal L. 53 …. 18

Somin, Ilya, Cato Supreme Court Review, "*Knick v. Township of Scott*: Ending a
        Catch-22 that Barred Takings Cases from Federal Court"….. 18

United States Constitution …………………………………………………… *passim*

**Introduction**

The First Amended Verified Complaint ("FAVC") [Exhibit 1 of accompanying Weiss Declaration] of Plaintiff Donald A. Vanderveer alleges that Defendants' individual and/or conjoined conduct violated Plaintiff's constitutional rights which are protected under the 5th Amendment's Takings Clause, the Due Process Clause of the Fourteenth Amendment and the Equal Protection Clause of the Fourteenth Amendment. More specifically, Vanderveer alleges, *inter alia*, that his vested property rights associated with the classification status (i.e., the pre-existing non-conforming commercial use of a 3.5+ acre property in the hamlet of The Springs) was essentially revoked, canceled and taken away through the Town of East Hampton's unconstitutional divestiture process that doesn't include any opportunity for confrontation or cross-examination of government or adverse witnesses and can only be judicially reviewed through a state judicial review process that is far too highly deferential to the Town's constitutionally defective fact-finding process ("Article 78") which also lacks guided standards and definitions for the Building Inspector and the Zoning Board of Appeals to evenly apply.

Vanderveer seeks a preliminary injunction *pendente lite* to prevent the Town and its enforcement officers from accusing him of local code misdemeanors due to his engaging in any commercial use of the property for "storage, warehouse and distribution facility" which is the "440" use classification that has continuously appeared on the property's real estate tax bill for decades through and including the tax bill issued in December 2018. [Exhibit 2 to Weiss Declaration]. The tax bills continue to be issued to Vanderveer's mother Florence Vanderveer, and Vanderveer was judicially designated as

the executor of her Estate by a decree in Kings County. [Exhibit 3 of Weiss Declaration].

Vanderveer is also the sole beneficiary under Florence Vanderveer's will and he has

commercially used the property continuously since it was acquired by his parents in

1949.(FAVC ⸿ 24).

## **Subject Matter Jurisdiction**

An analysis of subject matter jurisdiction should precede an analysis of the merits.

See <u>Steel Co. v. Citizens for Better Environment</u>, 523 U.S. 83 (1998). Therefore, before

any judicial analysis of whether or not the movant has satisfied the 4 prongs for

(temporary or) preliminary injunctive relief, the Court must first determine that it has

subject matter jurisdiction under Article Three. In <u>Steel Co.</u>, Justice Scalia announced

that a "drive-by jurisdictional ruling" (i.e., a ruling that assumed jurisdiction and went

straight to the merits) was constitutionally incorrect, and Justice Scalia specifically

identified a Second Circuit opinion authored by Judge Weinstein (sitting by designation)

which employed that incorrect analysis because it skipped to the merits.

Some 42 U.S.C. §1983 cases present a straightforward and simple argument in

favor of subject matter jurisdiction. But the cases involving an assertion of facial

challenge to a state custom, policy, practice, statute, rule, regulation or administrative

determination is undoubtedly more difficult for plaintiff's lawyer to present. It may be

because there are many players involved with, and/or contributing to, the deprivation

scenario. See <u>Krimstock v. Kelly</u>, 306 F.3d 40, 51 (2d Cir. 2002) (judges "remain

mindful that '[d]ue process is inevitably a fact-intensive inquiry"). Even the seminal case

of  <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990), which found Due Process violations in

Florida's statute concerning "voluntary" admissions to mental hospitals, was closely decided 5-4, following a deeply divided *en banc* Circuit Court opinion and also a district court dismissal which was affirmed by a divided merits panel. An explanation of the basis for subject matter jurisdiction in this case is one that requires the presentment of precedent to guide this Court.

Although our federal district courts are typically not considered to be the zoning boards for the nation, there are at least 3 cases that support subject matter jurisdiction for the case *sub judice*. If this Court finds that any one of them can supply precedent for subject matter jurisdiction, then this Court will have determined that subject matter jurisdiction exists here. As Justice Ginsburg explained in <u>Sprint Communications, Inc. v. Jacobs</u>, 571 U.S. __ (2013): "We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States' (cite omitted)."

The first precedent is <u>Brady v. Town of Colchester</u>, 863 F.2d 205 (2d Cir. 1988) (reversing district court's dismissal of the substantive due process and equal protection claims). Here's Judge Lawrence Pierce's eloquent opening paragraph in the opinion: "This case involves a zoning dispute which arose out of plaintiffs-appellants' attempts to renovate and lease commercial property located in Colchester, Connecticut. While this Court has long recognized that purely local zoning disputes are generally matters which are best left to municipal and state agencies to resolve, from time to time we are presented with cases that warrant, and indeed require, the attention of the federal judiciary. We believe that the present matter falls into the latter category." In <u>Colchester</u>

the landowner alleged that the property had a commercial use based upon its history of use, but the town argued that the use must be residential. That's the same dispute here.

The second precedent is the recent Takings Clause case which SCOTUS announced on June 21, 2019: <u>Knick v. Township of Scott</u>, __ U.S. ___ (2019) (SCOTUS #17-647 (6-21-19). (The FAVC includes a 5th Amendment "Takings Claim" which is not premature. See ¶¶ 4 & 21). In <u>Knick</u>, SCOTUS looked at a local ordinance in a Pennsylvania municipality. Here's what the SCOTUS syllabus says: "The Township of Scott, Pennsylvania, passed an ordinance requiring that " [a]ll cemeteries … be kept open and accessible to the general public during daylight hours." Petitioner Mary Rose Knick, whose 90-acre rural property has a small family graveyard, was notified that she was violating the ordinance." The text of the opinion explains: "Knick lives in a single-family home on the property and uses the rest of the land as a grazing area for horses and other farm animals". The dawn-to-dusk "taking" of a portion of the land for a public purpose is what triggered the "Takings Clause" claim. "Taking away" a pre-existing commercial use of Vanderveer's property is related to the public purpose of effecting a compliance of only a residential use within a geographical area of the town that was later designated as residential in 1957 when local zoning codes first took effect. The forced compliance with residential usage restrictions promotes the public purpose of ensuring a quieter and more visually appealing usage of the property, in harmony with (mostly) residential neighbors. East Hampton has a Community Preservation Fund that it can use to purchase land, but Vanderveer was paid nothing for the "taking" of the commercial usage of his property. Thus, the Fifth Amendment's "Takings Clause" provides a basis for federal jurisdiction.

The third precedent is a Second Circuit opinion authored by Judge George Pratt: Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir. 1986). It involved a town's refusal to issue a Certificate of Occupancy for a completed house, a duty which the Second Circuit described as ministerial (i.e., not discretionary and, hence, not entitling the town actor to qualified immunity for a discretionary act). In Salem, Judge Pratt began the opinion by writing: "We are mindful that federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by the circuit's many local legislative and administrative agencies. Federal judges lack the knowledge of and sensitivity to local conditions necessary to a proper balancing of the complex factors that enter into local zoning decisions.  Even were we blessed with the requisite knowledge and sensitivity, due regard for the constitutional role of the federal courts in our dual judicial system would permit us to exercise jurisdiction in zoning matters only when local zoning decisions infringe national interest protected by statute or the constitution.  However, when a landowner's constitutional rights are infringed by local zoning actions, our duty to protect the constitutional interest is clear. (cites omitted)……  We disagree, however, with [the District Court's] conclusion that plaintiff's right to receive a certificate of occupancy is not protected by the due process clause of the constitution.  We therefore reverse [USDJ Cabranes] on that issue and remand for further proceedings against the affected defendants." The case *sub judice* is like Salem because Vanderveer's request was for the Building Inspector to issue a certificate of occupancy for "storage and warehouse" covering both inside the small barn and also outdoors on the 3.5+ acre lot,

and Building Inspector Glennon refused to perform that administrative task although the property qualified for such a certificate of occupancy.

If this Court were only being asked to consider a federal complaint on the basis of a federal Equal Protection Clause claim or a federal Liberty Interest claim, the Court might have reason to delve more deeply into whether the specific factual allegation of offending conduct actually violated the federal constitution and not New York's Constitution alone. However, the FAVC alleges, *inter alia*, violations of the Fourteenth Amendment's Due Process Clause including a facial challenge to New York's peculiar "Article 78" civil procedures that adversely impact the quality and quantity of justice that Vanderveer received and/or is entitled to receive. Such challenges necessarily bring up for federal review the issue of whether or not a State judicial system is following the federal constitution as interpreted by federal courts including SCOTUS, as Article VI of the Constitution requires in the Supremacy Clause.

Furthermore, there are not any applicable doctrines, such as the Rooker-Feldman doctrine, to divest this Court of subject matter jurisdiction because there was no signed state court judgment issued by a state court in the pending Article 78 proceeding before commencement of this federal suit on July 2, 2019. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).  See also Green v. Mattingly, 585 F.3d 97 (2d Cir. 2009) (Rooker-Feldman "doctrine is confined to cases …. brought by state-court losers complaining of injuries caused by state-court judgments rendered *before*  the district court proceedings commenced and … " [italics added for emphasis]. Federal courts "are obliged to decide cases within the scope of federal jurisdiction." Sprint

Communications, Inc. v. Jacobs, 571 U.S. _ (2013) ("abstention is not in order simply because a pending state court proceeding involves the same subject matter.")

Neither collateral estoppel nor *res judicata* preclude subject matter jurisdiction. (NB: Both a "so-ordered" transcript was finally filed on September 9th and a Judgment denying Plaintiff's Article 78 petition was signed on July 22nd and stamp-filed July 30th.)

In any event, when a federal claim "attacks an alleged defect of state administration or legislation rather than adjudication… it is not a challenge to a judicial proceeding" under Rooker-Feldman. See Hachamovitch v. DeBuono, 159 F.3d 687 (2d Cir. 1985).

## Temporary & Preliminary Injunction Standard

We turn now to the test to apply in the judicial evaluation of a temporary and preliminary injunction. The controlling case law is Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008) (military preparedness outweighs environmental concerns for whales in vicinity of sonar). Under Winter, we examine whether an irreparable injury is "likely" in the absence of an injunction, the likelihood of success on the merits at trial, whether the proposed injunction is not plainly outweighed by the government's interest (i.e., balancing), and whether it's in the public interest. Plaintiff's motion satisfies that 4-part test. [Winter's "likelihood of success" element superseded this Circuit's alternative "serious questions" analysis, but that outdated analysis sometimes appears in opinions.].

### Irreparable injury.

Subjecting Plaintiff to new criminal prosecutions will cause irreparable injury even if he's released "R.O.R." because of imposed restraints on liberty. See Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ("right to travel", etc.) and McDonough v. Smith, __

U.S. __ (2019) SCOTUS #18-485 (6-20-19) at fn. 4 (same). Under NY CPL §510.40 (2), an accused must <u>always</u> be available for the court. Thus, the first factor is easily satisfied.

### Likelihood of Success on the Merits

Plaintiff can also easily demonstrate his likelihood of success of the merits under several theories: facial unconstitutionality of the Town's local codes, the unconstitutional application of those local town codes, due in large measure to undefined words in the text and the unguided standards that were much too vague and the ZBA's failure to allow any cross-examination of government witnesses (or neighbor) or confrontation through fundamental principles of due process; the unconstitutional acts constituting a violation of the Fourteenth Amendment's Equal Protection Clause; and violations of the Fifth Amendment's "Takings Clause". Plaintiff can also easily demonstrate the constitutional inadequacy of New York's Article 78 procedure, which is the only method available to Vanderveer to review the unconstitutional action of the ZBA.

### Likelihood of Success on <u>Due Process (Procedural & Substantive)</u>

Vanderveer asserts challenges both facially and "as applied". Vanderveer also alleges violations of both Procedural Due Process and Substantive Due Process. One District Judge has described the distinction as sometimes "fuzzy". See <u>Ginaitt v. Haronian</u>, 806 F. Supp. 311 (D. R.I. 1992) (Judge Pettine: "I realize that the dividing line between substantive and procedural due process is fuzzy. Some distinctions, however, can be articulated."). While jury instructions must separately identify each claim with precision so that the correctness of a monetary award can be reviewed on appeal, an explanation of these elements can be grouped together in connection with a Rule 65

motion with a page limitation, since the District Court is only estimating a "likelihood" of victory after completion of discovery, which is a prediction or a "hunch" based upon judicial experience, without a formulation of a "sure bet" on any specific claim.

Plaintiff's FAVC challenges the TOWN's and the ZBA's custom and practice of not allowing cross-examination of witnesses at ZBA hearings where the Board's decision making can result in (or at least continue and affirm the Building Inspector's opinion or determination of) a divestiture of a vested pre-existing (before 1957) non-conforming commercial right of use and thus, *a fortiori*, render such continued commercial usage to be a crime under local law because of the property's usage other than as a single-family residential. It alleges the Town of East Hampton's and ZBA's "deliberate indifference" to the federal constitutional rights of those appearing before its boards, demonstrated by their failure to educate and train members about the 14th Amendment, Due Process, and Equal Protection, and procedures required under Mathews v. Eldridge, 424 U.S. 319 (1976) whenever live testimonial evidence is given. Limited opportunities to refute adverse witnesses' testimony by only submitting some competing narratives is constitutionally deficient under Mathews. New York's Article 78 review is also constitutionally inadequate, as it too rigidly compels deference to the ZBA agency.

The Mathews factors are well established, and they are meant to protect people from a mistaken or unjustified deprivation of life, liberty or property. Under Mathews we consider: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the

government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail". Id. at 335.

### Mathews factor #1: Property & Liberty Interests

The first inquiry is to determine whether Vanderveer has a property or liberty interest. In the absence of such a protectable interest, a Due Process Claim is doomed from the start. The interest must, of course, be something more than "wishful thinking".

Vanderveer alleges that he has a property interest in (i) the continuing commercial use of the real property for storage and warehouse (and as a facility related to distribution of what is stored and warehoused, but not as a point of sale for shoppers), (ii) a certificate of occupancy to reflect such a commercial use, for which he has a legitimate claim of entitlement, and (iii) a liberty interest in using the property for commercial storage and warehouse because he is personally engaged in the profession of being the owner-operator of a small marina on nearby low-lying land and to be successful in that marina operation he needs to engage in some storage of marina-related chattel on this property.

In other words, Vanderveer's protected interests here are: (1) the right to obtain a certificate of occupancy for "commercial use", as "storage, warehouse and distribution facility" (the "440" tax assessor classification, both inside the small barn and outside all over the property), (2) the same continuing usage under state case law and local codes that ensured it even without issuance of a written certificate of occupancy, and (3) the liberty interest is using the property for commercial use in that "440" classification, both for income and as part of Vanderveer's profession as a marina owner/operator on nearby low-lying land in the hamlet of The Springs.

As Judge Pratt thoughtfully explained in <u>Town of Salem</u>, there really is no daylight between a property or liberty interest in the context of these land use cases. Any interest that is once already "vested" can be a property interest that cannot be taken away without due process. So, for example, a driver's license issued by the State and needed for one's livelihood cannot be taken away without due process, whether or not driving is considered a "right" or, alternatively, merely a "privilege". <u>Bell v. Burson</u>, 402 U.S. 535 (1971). These protected interests are often called "state-created".

"[P]roperty rights have a basis in natural rights as well as purely positive state law. Indeed, the existence of property rights long predates state law, or indeed any law enacted by modern states. The natural-rights understanding of property rights was a crucial feature of the original meaning of the Takings Clause and other constitutional provisions protecting property rights." Ilya Somin, Cato Supreme Court Review, "*Knick v. Township of Scott*: Ending a Catch-22 that Barred Takings Cases from Federal Court", at 165, fn. 59 (citing Ilya Somin, <u>Federalism and Property Rights</u>, 2011 U. Chi. Legal L. 53, 84-86).

It is beyond cavil that the Constitution protects "life, liberty, or property" without qualification, treating a property right as fundamental, forbidding the government from imposing arbitrary or irrational restrictions on its use. See <u>Village of Euclid v. Amber Realty</u>, 272 U.S. 365 (1926) (entitled to peaceful enjoyment of possession).

The Second Circuit uses a strict "entitlement" test to determine whether a party's interest in a land-use regulation is protectable under the 14th Amendment. This inquiry stems from the view that a property interest can sometimes exist in what is sought -- in addition to the property interest that exists in what is owned – provided there is a

"legitimate claim of entitlement" to the benefit in question. Zahra v. Town of Southold, 48 F.3d 674 (2d Cir. 1995).

Sometimes a protectable interest isn't one that is 100% assured, but it must be one that is highly likely and it certainly must be one that is more than speculative. See Jeffries v. Harleston, 828 F. Supp 1066 (S.D.N.Y. 1993) (Conboy, J.) [granting defendants' post-trial motion to vacate portion of judgment based on Due Process violation for denial of renewal of professor's department chairmanship) ("A property interest cannot arise from the mere past practices of an employer."; something more is required.)

Sometimes the revocation of one interest (a property interest) triggers the revocation of an associated interest (a liberty interest in some type of employment). Greene v. McElroy, 360 U.S. 474 (1959). Logically, a formal ZBA Determination that affirms a denial of an application for a certificate of occupancy for a pre-existing non-conforming commercial use implicates the revocation of the associated commercial use itself, although pre-existing non-conforming commercial uses typically do not require a landowner  obtain a certificate of occupancy for such use unless the landowner intends to build, expand a building or add a new use.

The syllabus of Greene v. McElroy, 360 U.S. 474 (1959) states: "*Held:* In the absence of explicit authorization from either the President or Congress, the Secretaries of the Armed Forces were not authorized to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." Greene includes some judicial insight into the rights of "confrontation and cross-examination" in the context of a (civil) administrative hearing. (i.e., "Certain principles

have remained relatively immutable in our jurisprudence….) Thus, <u>Greene</u> established that a revocation of a government security clearance for an aeronautical engineer implicates a protected property interest and that its revocation [based on reports of unnamed persons asserting that Greene had affiliations with Communists] would also effectively deprive him of a protected liberty interest to work in his chosen profession because a security clearance was a well-established job requirement for all engineers whose companies had contracts with defense contractors (or with the government).

The EH ZBA also didn't follow the State manual rules. [FAVC ¶ 62 & Ex.6].

In New York, the Court of Appeals held in <u>Knight v. Amelkin</u>, 68 N.Y.2d 975 (1986) that a landowner has a right to a "quasi-judicial" hearing before a town zoning board of appeals (of a Long Island town) in connection  with an application for a "variance" or for a "special exception" permit that could result in a denial of that landowner's use of the property as requested. The <u>Knight</u> Court also firmly explained that the rationale for any determination must be expressed in writing, setting parameters so that an effective review at the next level could occur. Thus, New York's highest court gave protection to such property rights, which, in turn, required a certain level of Due Process in connection with a determination of whether such new uses could ensue.

Finally, in <u>Sullivan v. Town of Salem</u>, *supra*, Judge Pratt stated: "If, … Sullivan's … houses full conformed to all other requirements is true, then, under Connecticut law he was entitled to the certificates of occupancy that would have enabled him to sell the houses for use in the manner they were intended.  If the houses complied with the applicable state and municipal requirements, there was no element of discretion or

judgment remaining in the building official to exercise to determine whether to issue the certificates."

### Mathews factor #2: Risk of Erroneous Deprivation/Safeguards

The second factor is a risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards.

### The ZBA's Deliberate Failure to Afford Confrontation & Cross-Examination

### The EH ZBA's prohibition of direct examination and cross-examination is inconsistent with some state guidelines albeit not contrary to any current state law about procedure or evidence.

It is undisputed that EH ZBA has a policy that prohibits cross-examination of any witness; each must narrate, and the ZBA renders its determination based on its evaluation of "competing narratives". It is well accepted that there is a risk of erroneous deprivation of a property or liberty interest where confrontation or cross-examination of a government witness is denied to the person whose adversary is the government. The Sixth Amendment mandates the right of cross-examination in a criminal context. Crawford v. Washington, 541 U.S. 36 (2004) added further protections for an accused to object to the government's introduction of testimonial evidence where the author of the document does not take the stand and the defense had no opportunity to depose the author before trial. Here, the result of not granting Vanderveer the certificate of occupancy for a pre-existing, non-conforming commercial use of "storage and warehouse" is the automatic adverse consequence of making him a criminal for his engaging in the commercial use prohibited under the town code and classified as a misdemeanor. So, the ZBA hearing foreseeably operates as much more than a simple affirmance of a Building

Inspector's denial of a certificate of occupancy for a "grandfathered" commercial use. It renders an existing use tantamount to a crime, i.e., a misdemeanor for which Vanderveer could be charged and imprisoned for many months under local law

New York state manual rules (FAVC ⁋ 62 & Ex. 6) impose a duty to provide cross-examination at ZBA hearings.  Ignoring that is a *per se* Due Process violation. See Vitarelli v. Seaton, 359 U.S. 535 (1959) (agency is "bound by" its own regulations promulgated for handling cases). Because the adverse result in a civil ZBA matter renders Plaintiff's current conduct "criminal" under the local law if the state-created pre-existing nonconforming use is taken away without Due Process, Bell v. Burson, 402  U.S. 535 (1971), a "no cross-examination" policy violates 6th Amendment rights of the Confrontation Clause (and Crawford v. Washington, 541 U.S. 36 (2004)).

The FAVC at ⁋⁋ 64-65  quotes Doe v. Baum, 903 F.3d 575 (6th Cir. 2018) (student misconduct hearing) to explain the probable value of confrontation and cross-examination in an administrative hearing that is not criminal in nature but may, nevertheless, involve a governmental divestiture/cancellation/ revocation of protected property or liberty interests. This memorandum adopts FAVC ⁋⁋ 64-65, including that : ".. when the … determination turns on the credibility … the hearing must include an opportunity for cross-examination".  "Due process requires cross-examination in circumstances like these because it is "the greatest legal engine ever invented or uncovering the truth"…"

It is beyond cavil that reliance upon "competing narratives", while prohibiting all cross-examination, at a ZBA hearing can very likely result in an erroneous deprivation of a protected interest.  It is also beyond cavil that the likelihood of such erroneous

deprivation can be minimized by the ZBA providing the applicant (and the applicant's lawyer) with an opportunity for cross-examination of all government witnesses, neighboring property owners whose legal position supports a Building Inspector's prior denial, and by an opportunity for direct examination of an applicant's own witnesses who sensibly need a "Q & A" format for the full and fair presentment of all relevant factual information. It is also beyond cavil that affording an opportunity for the "pre-existing, non-conforming commercial use" applicant's presentment of witnesses through modern technological means, such as SKYPE or other live video, at a public hearing can minimize the likelihood of erroneous deprivation of a protected interest, which depends upon the long term memories of those persons who have moved far away and cannot attend the public hearing due to financial or physical constraints.

The FAVC at ¶ 123 quotes from a New York case at the Court of Appeals, <u>Knight v. Amelkin</u>, that demonstrates that since at least 1986, ZBA hearings must be conducted as "quasi-judicial hearings" if the application concerns a "special exception" or "variance". A pre-existing, pre-zoning, non-conforming commercial use (i.e., "440 Storage, Warehouse, Distribution Facility") in a currently zoned residential zone falls within the category of a "special exception", as it is an "exception" to the currently designated use classification.  Thus, New York's highest court has found "quasi-judicial" hearings to have probable value. Although <u>Knight v. Amelkin</u> did not expressly state that "cross-examination" of governmental witnesses (and the accompanying ability of the applicant's lawyer to meaningfully confront government witnesses and adverse witnesses about the content of testimonial documents that are provided by the Building Inspector to

the ZBA), SCOTUS had already clearly established in <u>Greene v. McElroy</u> that an agency hearing must include cross-examination and confrontation. That means that it must be implemented in state and local ZBA hearings where an arguably vested right is subject to revocation. Defendants must follow that rule of law. See <u>Pabon v. Wright</u>, 459 F.3d 241, 255 (2d Cir. 2005) (SCOTUS and Second Circuit "clearly establish" rights.)

**The absence of an evidentiary rule allowing cross-examination is disproportionately disadvantageous to a landowner applicant compared to the ZBA's goal to resolve hearings in one evening session**

The absence of an evidentiary rule permitting cross-examination is disproportion-ately disadvantageous to a landowner applicant compared to the ZBA's goal to resolve hearings in one evening session. The EH ZBA determination relied upon the testimony of a witness (an employed legal secretary) who swore she saw no commercial use when she rode her horse by on an "average" of once a week. Her testimony about her personal observations couldn't be challenged by cross-examination. Therefore, Vanderveer's attorney couldn't ask her about whether she observed commercial trailers on the property. Vanderveer's own evidence (Weiss Declaration Ex. 4) shows there were very old trailers on the property over the years, continuing to the present. New York law also permits replacement trailers to be substituted, under the pre-existing, non-conforming commercial use doctrine in New York. See <u>Barron v. Getnick</u>, 197 A.D.2d 1027 (4th Dept. 1985).

Federal courts should review state court evidentiary rulings. See <u>Scrimo v. Lee</u>, ___ F.3d __ (2d Cir. 2019) (8-20-19) (reversing EDNY) (analyzing whether state trial court's ruling was "contrary to" or rather an "unreasonable application of" the law. See <u>Hawkins v. Costello</u>, 460 F.3d 238 (2d Cir. 2006)("when a trial court's evidentiary exclu-

sion take on a constitutional dimension..." and where "the evidentiary ruling was correct pursuant to a state court's evidentiary rule," the limited appellate court inquiry is whether an evidentiary rule is "arbitrary or disproportionate to the purpose it is designed to serve."

### No Guided Standards for the Terms "Commercial" & "Abandonment"

The FAVC at ¶ 136-137 explains the factual allegations concerning the unconstitutionally vague zoning code provisions. Zoning statutes which thwart the use of any property must be strictly construed in favor of the landowner. See generally Patricia E. Salkin, "Abandonment, Discontinuance and Amortization of Nonconforming Uses: Lessons for the Drafters of Zoning Regulations", Digital Commons at Touro Law Center 2010. Although the property owner has the burden of proof as to the preexisting nonconforming use, that burden is effectively *di minimus* where a town's legislative body did not ever promulgate any local laws defining "commercial" and "abandonment" in a way that clarifies and provide meaningful guidance to the administrative enforcers such as building inspectors, code enforcement officers, zoning board members, and the attorneys who are employed by the town and the ZBA. Without such definitions and guidance, those officials lack any justification to find that the landowner's proof is less convincing that the neighbors' or municipal officers' proof. The Rule of Lenity applies.

In other words, the "decider" and the "definer" cannot be the very same person because that would transgress the United States Constitution. Writing for the majority, in Grayned v. City of Rockland, 408 U.S. 104 (1972), Justice Marshall stated that the protection of constitutional rights should not be left to the discretion of law enforcement officers (nor judges for that matter), however well meaning they may be, because

discretion creates non-compliance with the constitutional requirements of narrow tailoring. The vagueness that arises from delegating discretion to law enforcement officers (when the municipality's legislative body failed to articulate the standards to apply to a municipal official's decision making) was described by Justice Marshall:

> "A vague law impermissibly delegates basic policy matters to policemen, judges and juries and juries for resolution on an ad hoc and subjective basis, with the attendant dangers or arbitrary and discriminatory application …".

See also <u>Bledsoe v. City of Jacksonville Beach</u>, 20 F. Supp. 2d 1317 (M.D.Fla. 1998).

The Town of East Hampton, acting through its Town Board, has never defined the word "commercial" in the context of a pre-existing nonconforming "commercial" use for "storage and warehouse". The Building Inspector's Opinion Letter and the ZBA Determination do not provide any regulations or rules that form basis for the expressed conclusions. It's purely *ad hoc.* There is no pre-announced requirement that a property owner obtain money from third parties to maintain a commercial status. There's no pre-announced requirement for income ledgers or checks to be maintained. Merely storing and/or warehousing materials with a business oriented use is legally sufficient under one of the generic (dictionary) definitions of "commercial".

The Town Board also never defined the word "abandonment" This is also problematic for the Town Defendants. While it may be fairly obvious to neighbors and passersby when a pizzeria ceases to operate in a rural area of town (i.e, the delicious aroma of pizza no longer wafts throughout the neighborhood), it is more difficult to ascertain the 100% cessation of a commercial use where one or more persons plop down some movable physical property on real property and leave the items unattended for a

substantial period of time. Storage facilities may be visited for just a few minutes from time to time to add or remove a chattel or two; grass may be mowed to keep the truck turning radius free from overgrown brush; or one storage container or trailer may be switched or replaced with another one of substantially similar characteristics. Moreover, the case law in New York has already established that the conduct of "abandonment" must be 100% unless a local code's text expressly specified some qualifying words such as "substantially abandoned" (and the Town's Code didn't do that). The FAVC ¶97 includes the case law and explains it. Town of Islip v. P.B.S. Marina, 133 A.D.2d 81 (2d Dept. 1987) (usage twice a year on different days avoids abandonment) and Matter of Marzella v. Munroe, 69 N.Y.2d 967 (1987) ("abandonment does not occur unless there has been a complete cessation of the nonconforming use").

Finally, laws which are unconstitutionally vague and standardless cannot provide the basis for a deprivation of property and liberty interests because they are unconstitutional.  This is true in both the criminal context (Johnson v. U.S., 576 U.S. __ (2015)) and the civil context (Sessions v. Dimaya, 584 U.S. ___ (2018) [18 USC §16(b)] where phrases like "violent crime" or "crime of violence" were held to be unconstitutionally vague and standardless and thus ineffective to accomplish what the legislators might have intended.

**Constitutionally Flawed ZBA Determinations Are Not Correctable In New York**

It's critically important that the EH ZBA afford full and fair due process because the constitutionally flawed EH ZBA Determination isn't correctable under New York's Article 78 procedure, i.e., the State procedural rule that encompasses special writs.

Vanderveer's challenge to the analysis of the ZBA Determination, includes, *inter alia*, a challenge to the quantity and quality of evidence that is expressed therein to support an affirmance of the Building Inspector's denial of a certificate of occupancy for a pre-existing, nonconforming commercial use for indoor and outdoor storage and warehouse. In other words, Vanderveer's alleges there was not "substantial evidence" to support any conclusion other than the conclusion that the property was entitled to the requested certificate of occupancy because (1) there was no opposing evidence that The Vanderveer Family's continuous usage from pre-1957 until the day of the Determination was not "commercial" under one of the generic definitions Vanderveer was entitled to rely upon, and (2) there was no opposing factual evidence to support a conclusion such continuing commercial usage after 1957 was ever 100% abandoned during any of the time periods for presumptive abandonment specified in the code. Without testimonial evidence of a witness's personal observations of the property 24/7/365, it's nearly impossible to successfully argue that the property was insufficiently in use for the passive and/or active events associated with storage, and/or keeping the property mowed and brush free in some center areas so that trucks (and large vehicles with tow equipment) could safely drive around the property when dropping off and picking up chattels.

Under CPLR Article 78, however, a "substantial evidence" review is not available for the ZBA determination because (despite the New York Court of Appeals' 1986 holding in <u>Knight v. Amelkin</u>) CPLR 7804 does not expressly allow ZBA hearings to be reviewed to determine whether there was "substantial evidence" to support the ZBA Determination. By custom and policy, EH ZBA hearing determinations are not reviewed

by NY Supreme Court under the "substantial evidence" criteria. CPLR 7803(4) and 7804 essentially require Supreme Courts to transfer an Article 78 petition for a quasi-judicial hearing matter to its Appellate Division, Second Department for further fact-finding, but inasmuch as there is Second Department case law holds (contrary to <u>Knight v. Amelkin</u>) that a ZBA hearing is administrative and not quasi-judicial, Suffolk Supreme is unable to transfer the case to the Second Department since the "evidence taken" was not "pursuant to direction by law" inasmuch as no part of CPLR or any other state statute expressly requires that evidence taken at ZBA hearings be taken "under oath" and be "subject to cross-examination" in the traditional manner is which sworn testimony is tested.

Although CPLR 7803 permits Suffolk Supreme to review a ZBA Determination which is "affected by an error of law", the review permitted does not expressly extend to what is considered a procedural error of law due to a failure of the ZBA to afford cross-examination in a hearing that is supposed to be conducted in a "quasi-judicial" manner under <u>Knight v. Amelkin</u> (i.e., for special exceptions and variances), which would necessarily include some confrontation and cross-examination under <u>Greene v. McElroy.</u>

SCOTUS has already recognized, in <u>Armstrong v. Manzo</u>, 380 U.S. 545 (1980), that Procedural Due Process rights must be offered at an earlier stage where the burden of proof does not increase for a party asserting such property and liberty interests (in <u>Manzo</u> Texas statutory law held unconstitutional because it did not require advance notice to the biological father in an adoption proceeding brought by the stepfather with the biological mother's consent, and because the biological father's burden of proof to vacate the adoption decree would be greater than his burden of proof to demonstrate that he had not

abandoned his duty to support the child over a certain statutory period of time.) Other state appellate courts have explained the different standards of review as a land use determination case proceeds up the ladder in the sequence of review.  See FAVC ¶ 122, citing <u>Cook v. Union County Zoning Board of Adjustment</u>, 185 N.C. App. 582, 649 S.E.2d 458, 467 (N.C. 2007).

Defendants' conduct propelled Plaintiff into NY's Article 78 review procedures which are inadequate under a federal constitutional analysis.  In 2005, the Second Department articulated the limited review standards for zoning board decisions in <u>Matter of Halperin v. City of New Rochelle</u>,  24 A.D.3d 768 (2d Dept. 2005) when it explained that the facts could not be independently reviewed for sufficiency by the Appellate Division under CPLR 7804 using a "substantial evidence" test because ZBA hearings are not "quasi-judicial", but are considered to be "administrative", which implies less due process.  Notwithstanding <u>Halperin</u>'s holding that ZBA hearings aren't "quasi-judicial", at least 2 post-<u>Halperin</u> Suffolk Supreme Court cases held otherwise, following <u>Knight v. Amelkin</u>. See <u>Turturro v. Zoning Board of Appeals of the Town of Brookhaven</u>, 2007 Slip. Op. 51633(U), 16 Misc. 3d 1129 (A) (8-27-07)  (Peter H. Meyer, J.) ("Inasmuch as a Zoning Board of Appeals performs a quasi-judicial function when considering applications for variances…") .  See also <u>Cilla v. Mansi</u>, Index #3563-02 (5-8-2002) 2002 NY Slip Op. 50208(U) 2002 NY Misc. LEXIS 657(Thomas Whelan, J.) ("Because zoning board of appeal proceedings are quasi-judicial, all parties, applicant and opponent alike, must be given an opportunity to refute any evidence presented.")

Yet, other Nassau Supreme judges seemingly follow <u>Halperin</u>. See <u>Matter of Healy v. Town of Hempstead Bd. of Appeals</u>, 2018 NY Slip Op. 28261 (8-28-18) (Leonard D. Steinman, J.) ("The Board's hearings are not quasi-judicial in nature and do no require the swearing of witnesses or cross-examination of them.") (rejecting argument that the inability of non-applicant to cross-examine at ZBA hearing violated due process, in matter about approval to build a Hellenic Cultural Center).

Thus, New York courts take divergent, contrary and bipolar viewpoints about the nature of the ZBA hearings and the rights associated therewith, impacting Article 78).

Furthermore, New York State Court review is described in <u>Halperin</u> in a way that is now, modernly, far too deferential to agency decisions such as zoning boards. This judicial analysis did not differentiate between a ZBA hearing where there was sworn testimony (as in Vanderveer's ZBA hearing) from one where there was no sworn testimony at all. Even the "substantial evidence test" review would be constitutionally inadequate under modern Due Process Jurisprudence. See <u>Matter of Haug v. SUNY Potsdam</u>, 32 N.Y.3d 1044 (2018). (The "substantial evidence test is a relatively low or minimal evidentiary standard, requiring even less proof than the preponderance.").

Under modern Due Process jurisprudence, all courts must have "power" to critically review agency decisions, even if they cannot generally substitute their own judgment for an agency's. (FAVC ¶156). See <u>Department of Commerce v. New York</u>, __ U.S. ___, SCOTUS #18-966 (6-27-19)(5-4) [census] ("[W]e cannot ignore the disconnect between the decision made and the explanation given by the administration")  ("The reasoned explanation requirement of administrative law, after all, is meant to ensure that

agencies offer genuine justification that can be scrutinized by courts and the interested public."). Commerce explains the judiciary's duty of "reviewing the evidence as a whole" and then remitting when the agency decision isn't "adequately explained" after a judicial review of "points, considered together reveal a significant mismatch between the decision and the rationale provided." Haug concedes that NY state procedures don't fully allow NY Justices to evaluate under the same safeguards that federal Due Process requires. Haug describes too narrow a standard for state judges, omitting mandatory review for "ambiguous" text, "bad faith", "pretext" and "improper procedures". Federal courts should ensure that principles of federalism prevent state judgments arising from inadequate state procedures that transgress the Due Process and Equal Protection Clauses of the 14th Amendment. See Texaco v. Pennzoil, 784 F.2d 1133 (2d Cir. 1986), *reversed on other grounds in* Pennzoil v. Texaco, 481 U.S.1 (1987): [1]Texaco never raised federal constitutional issues in the Texas state court, [2] Texas had a vital interest in enforcement of judgments from Texas courts which presumptively afforded all Article VI rights to litigants, as no Texas statute or case law expressed a diminishment the state judiciary powers compelled by the Article VI, [3] alleged procedural defects were (speculative) slow pace of state appellate review & 100% bond to "stay".

In reaching its decision, this Court should not hesitate to declare NY CPLR §§ 7803 and 7804(g) & (h) facially unconstitutional in its present form and declare that it is/was unconstitutionally applicable here. Such a single declaration can start a process and New York's Court of Appeals may eventually take notice. See People v. Golb, 23 NY 3d 455 (2014) ("Dead Sea Scrolls" case), finally rebuking NY Penal Law 240.30(1),

aggravated harassment in the second degree on vagueness and overbreadth. ("We agree with the defendants that this statute is unconstitutionally vague and overbroad, and the conviction … must be vacated … Three federal judges have already found the statute unconstitutional … Scheindlin .. Cardamone… Brieant…")

The Town Defendants' violations of Procedural Due Process, and Substantive Due Process, by cruelly increasing the cost of this review process, are significant. Defendants operate as if they can act however they wish simply because there is coverage under an insurance policy. But the taxpayers ultimately pay the price for increased premiums when strong-willed municipal officials do not strive to correct their unconstitutional policies.

These costs to Vanderveer could have been inexpensively ameliorated by the Town's directions to the Town Attorney to draft a more comprehensively guided town code which expressly defines terms and which expressly establishes the requirements of a quasi-judicial hearing,   and affording cross-examination at such ZBA hearings, to ensure that the erroneous deprivation of a property right does not occur. Better drafting is exactly what Patricia E. Salkin recommended in her land use treatise and also what Suffolk Supreme Court Justice John J. J. Jones, Jr. suggested to the EH ZBA in 2012 in another case that wrongfully deprived a land owner of a vested property right until Justice Jones fixed that. See Fee v. Zoning Board of Appeals of the Town of East Hampton, 2012 NY Slip Op. 32295 (U) (8-24-12) (Jones, Jr., J.) ("The concerns of the neighbors and witnesses at the hearing would be better met by an amendment to the code and not by arbitrary and capricious determination that a pre-existing dock was not "pre-existing" because it has not been functional for an unknown but significant length of time.")

## Mathews Factor #3: Minimal Burdens of Rule Drafting & Cross-Examination

The Town Defendants' financial and administrative burden to prevent such erroneous deprivation would not have been overwhelmingly difficult. First, there would have been some necessary redrafting, but the treatise and articles by Touro Law School's Dean Patricia E. Salkin solved this problem with drafting suggestions over a decade ago. The Town Defendants would have also had to study precedent from SCOTUS and keep up with case law from New York Court of Appeals, as <u>Knight v. Amelkin</u> and <u>Greene v. McElroy</u> demonstrate that affording Vanderveer and all other applicants for a special exception or variance or certificate of occupancy was constitutionally required.

Vanderveer is likely to be successful on his Substantive Due Process claim because the Town Defendants' conduct was arbitrary and capricious. It was also egregious and cruel and conscience shocking. In 2015, the Town authorized its (former) Town Attorney Michael Sendlenski to pursue various misdemeanor complaints against Vanderveer personally for, *inter alia,* a "change of use" of the property from purportedly residential to commercial. The Town's authorization of Mr. Sendlenski is unusual because he never received any direct delegation for criminal prosecutions of local misdemeanors against Vanderveer from (former) Suffolk County District Attorney Thomas J. Spota as required under NY County Law § 700 et seq., and under New York Constitution Article XII, §13, only the county district attorney can criminally prosecute.

Tasking Town Attorney Sendlenski with criminal prosecutions was inappropriate under the Fourteenth Amendment because he was never a neutral prosecutor who is duty

bound to "do justice", and there is a "probability of actual bias" akin to that found by SCOTUS to compel recusal by state court judges. See <u>Rippo v. Baker</u>, ___ U.S. (2017)

A jury could agree with Vanderveer that the Town Defendants deliberately acted arbitrarily, capriciously and egregiously, thwarted his ability to secure a certificate of occupancy for the commercial use at every turn and by every means, due to the Town Defendants' purpose in perpetuating a zoning scheme that was conscience shocking insofar as it began with criminal prosecutions based upon the Town's bias and essentially preempted persons paid by the Town (Building Inspector, ZBA Board Members, ZBA Attorney) from making any determination favorable to Vanderveer that would have been contrary to the criminal judgments obtained and would subject them to reversal at the Appellate Term of New York's Second Department. Building Inspector Glennon's opinion that the property could be used residentially is at odds with common sense, as the small barn lacks water, electricity and plumbing. [FAVC ⁋22].

### **Likelihood of Success on Equal Protection**

Plaintiff has also alleged an Equal Protection claim against the Town Defendants. Plaintiff alleges that the Town's high-ranking officials treated other similarly situated neighboring property owners more favorably than him, and that they did so due to a "bad faith" motive. Plaintiff's amended complaint alleges local "comparators" that are "fair congeners". The three comparators are parcels in the Town of East Hampton, in the hamlet of The Springs, see FAVC Dkt # 13, ⁋169-170, in Count IV. <u>Ruston v. Town of Skaneateles</u>, 610 F.3d 55 (2d Cir. 2010) reflects our Circuit's "comparators" analysis. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), a "class of one" case based on

"bad faith", also appears to require one viable comparator to avoid dismissal. Yet the degree of specificity and similarity of the identified comparators varies. (The Seventh Circuit does not require any specific comparator where there are allegations of a continuous pattern of harassment of a citizen, so obvious as to negate any conclusion that there was an unintended mistake by officials. Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir. 2012). It's a "Circuit split".)

In Hu v. The City of New York, ___ Fed.3d (2d Cir. 2019) (6-13-19), the Second Circuit issued a 59 page decision, reversed Judge Ross's Rule 12(b)(6) dismissal, and resolved a split of district courts in our Circuit by articulating the difference between Equal Protection claims brought under LeClair v. Saunders (2d Cir. 1980) and those brought under Village of Willowbrook v. Olech. To prevail under a LeClair claim, a plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure a person." In Olech, a plaintiff must state (and later prove) that "[1] that she has been intentionally treated differently from others similarly situated and [2] there is no rational basis for the difference in treatment." The panel held: "While Olech requires an "extremely high" degree of similarity between a plaintiff and comparator, LeClair merely requires a "reasonably close resemblance" between a plaintiff's and comparator's circumstance.", i.e., a "rough equivalency".

Within walking distance from Vanderveer's property is a commercially zoned property owned by a New York limited liability company in the control of a (former) East Hampton Town Justice. Although it was used simultaneously for multiple businesses of different types (taxi cabs and landscaping), it was purportedly permitted to operate in an unusually freewheeling manner without any commercial usage constraints by the Town, the Town's Building Inspector and the Code Enforcement Officers, despite the unusual nature of the varied uses. Other preexisting commercial uses adjacent to residences in The Springs were also operated without governmental harassment. See FAVC ⁋ 170 (the "first" ⁋170 at pps. 52-53)

Yet Vanderveer was singled out in "bad faith" for enforcement and harassment because the property was being used commercially for storage and warehouse, even though it had been continuously used in that commercial manner since 1949. First, there was criminal prosecution initiated, and continued, by Town Attorney Michael Sendlenski to whom Suffolk County District Attorney Spota never delegated any criminal prosecutorial authority to prosecute local code violations as misdemeanors. FAVC ⁋ 26.

Next, there was a denial by the Building Inspector in a letter of "opinion" that did not analyze the facts nor express any logical reasons for the opinion.

The Town Attorney prosecuted multiple criminal cases against Vanderveer before the Building Inspector had even issued a formal determination about whether there was a a lawful pre-existing non-conforming commercial use for the property. All convictions have been appealed. [FAVC ⁋26]. With a fellow employee having already led the criminal prosecution 2 years before, the Building Inspector cooperatively fell in line and

denied the application that Vanderveer sought from her, acting in bad faith. A government employee acts maliciously and with a bad faith intent to injure a person when he or she intentionally engages in conduct to protect her own job security at the expense of the civil rights of a public citizen with whom she interacts. See Hernandez v. Wells, No. 01 Civ 4376, 2003 WL 22772982, at *9 (S.D.N.Y. Nov. 24, 2003) (MBM) ("Fabricating assault charges to save one's own job could be abuse of process, however, because 'safeguarding one's own employment lies outside the legitimate goals of criminal process.")

After that, there was a ZBA Determination that reviewed a letter opinion without analysis and it was based upon *ad hoc* definitions and reasons which failed to explain, *inter alia*, as Knight v. Amelkin requires, any reason why other landowners were granted certificate of occupancies in the past but this differed. While the ZBA Determination stated that it did not rely upon the guilty verdicts in the criminal misdemeanor prosecution against Vanderveer (which are being appealed at AT2), it was nevertheless highly prejudicial to Vanderveer at both the Building Inspector and ZBA levels of review.

A maliciously orchestrated campaign causing substantial harm qualifies as a violation of the Equal Protection Clause. LaTrieste Rest. & Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994).

Vanderveer is likely to prevail on this claim as well because he alleged that the Town Defendants' conduct demonstrates a pattern of harassment. Vanderveer also alleged in FAVC ⸿ 185 that the nefarious campaign against him continued. (During a very cold winter night  after his criminal convictions, when Vanderveer had arranged for

someone to perform labor and monitoring of the tides at his marina to place equipment at

low tide in order /high to prevent the pilings from freezing and breaking,  a town code

enforcement officer charged him with another town code misdemeanor for permitting a

person to "reside" on a boat that didn't have a "certificate of occupancy".)

## Likelihood of Success on Takings Clause Claim

Plaintiff has been damaged, financially and emotionally, by Defendants'

unconstitutional "land grab", violating the 14th Amendment. See <u>Walz v. Smithtown,</u> 46

F.3d 162 (2d Cir. 1995).  The FAVC includes a 5th Amendment "Takings Claim" which

is not premature.  See ¶¶ 4 & 21, <u>Knick v. Township of Scott,</u> __ U.S. __ (2019)

(SCOTUS #17-647 (6-21-19).

Because Vanderveer believes he will be successful on the Takings Clause claim,

he moves for a preliminary injunction to restrain, during the pendency of this case,

criminal & civil enforcement of local codes, concerning the disputed issue of a pre-

existing nonconforming commercial use of SCTM # 300-37-3-22. The Town's property

tax bills [FAVC, Ex. 1] show the property classification as "440" for "storage,

warehouse," [and distribution]. There is no concrete evidence to oppose his own

testimonial statement that he and his family have used the property continuously  for

commercial purposes since before the enactment of local zoning (1957) through the

present, without any abandonment at law or in fact. For the public purpose of securing

more beautiful vistas or ensuring quietude, and without payment therefor, the Town

Defendants' individual and conjoined conduct unconstitutionally took from him a

valuable property right to continue to use the property for storage and warehouse use for chattels related to commerce and/or in a commercial context. This "taking" of a "right" in the "bundle of rights" lessened the property's fair market value. As a consequence, Vanderveer is entitled to compensation for the difference between the residential and commercial values, which is over $1,000,000.00.

**Vanderveer's need for an injunction *pendente lite* is not outweighed by the Town's interest, and an injunction is actually more beneficial to the public interest than the current policy.**

The injunction is in the public interest because it may prevent Plaintiff from making claims for federal malicious prosecution if he successfully defends future criminal prosecutions which the Town may initiate without the injunction. The Town pays the insurance policy "deductible" from public funds (which is at least $25,000). In addition to compensatory damages for a successful §1983 plaintiff, there are §1988 attorneys fees to consider in this and other §1983 lawsuits and the cost of insurance policies for claims that the Town could have easily avoided. (See Lilly v. City of New York, __ F.3d __ (2d Cir. 2019) (8-14-19) (Walker, Leval, Droney, JJ) (calculating §1988 attorneys fees by an evaluation of criteria such a "relatively straightforward" and "sole practitioner".) The Town Attorney can contact Vanderveer's attorney *pendente lite* if anything other than the s*tatus quo* usage occurs and counsel can request the Court's assistance if it's something that cannot be resolved by them. The public interest is not harmed by the proposed injunctive relief. The FAVC refers at ¶26 to 7 local code misdemeanor violations now on appeal at Appellate Term, Second Dept. The Town should sensibly await the AT2 decision (on the criminal aspects) and the AD2 decision

(on the anticipated appeal of the Article 78) before starting up more criminal prosecutions from which federal malicious prosecution claims can eventuate.

## A Qualified Immunity Defense is Unlikely to Be Successful

### Standards for Application of Qualified Immunity Doctrine

Even a 42 U.S.C. §1983 case that appears highly likely to succeed can fizzle when reviewed to determine whether the doctrine of qualified immunity will protect municipal official who are sued in their individual capacities as well as their official capacities. The question is this case is whether the named Building Inspector, the Board and the Board members, and the Board Attorney violated clearly established law when the engaged in the conduct complained of. As SCOTUS explained in City of Escondido v. Marty Emmons, 586 U.S. _ (2019) (1-7-19): "Qualified immunity attached when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known (cites omitted)… Under our cases, the clearly established right must be defined with specificity…" Thus qualified immunity protects officials from their discretionary actions unless they are violate clearly established law or are plainly incompetent.

### Qualified Immunity is Inapplicable in This Case

A right is clearly established if "the Supreme Court or the Second Circuit has recognized that right." Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2005) (internal marks omitted)

A Town  does not have absolute legislative immunity nor qualified immunity from its acts or its promulgated laws.  Goldberg v. Rocky Hill, 973 F.2d 70  (2d Cir. 1992)

Nor does a town official or employee who performs a ministerial act (i.e., an administrative act not involving discretion) have qualified immunity. In <u>Walz v. Town of Smithtown</u>, the Second Circuit found the issuance of an excavation permit to dig a trench to hook up to public water to be a purely ministerial act and therefore qualified immunity was properly denied. The Circuit also found that qualified immunity is intended to shield government officials from their discretionary official functions and that "Dowling was not exercising a discretionary function but by simply refusing to perform a ministerial act until a demand with absolutely no basis in legal authority was met"  See also <u>Sullivan v. Town of Salem</u> (issuance of certificate of occupancy by building inspector is an act that can be ministerial, not discretionary).

Where discretion is associated with the official task, we look to court decisions that have established the law clearly. SCOTUS decisions are an overwhelmingly compelling source of established law. <u>Greene v. Elroy</u>, <u>Bell v. Burson</u> and <u>Mathews v. Eldridge</u> firmly established principles of law that guide the civil procedures that protect Due Process.  <u>Johnson v. U.S</u>. and <u>Sessions v. Dimaya</u> firmly support the vagueness aspect in due process analysis. See <u>Rothenberg v. Daus</u>, _ Fed. Appx _ (2d Cir. 2d 2012).

Another source of clearly established law is New York's Court of Appeals. <u>Knight v. Amelkin</u> proclaimed ZBA hearings for "variance" and "special exception" applications to be conducted as "quasi-judicial" hearings. Vanderveer's appeal to the ZBA, seeking reversal of the Building Inspector's denial of the requested certificate of occupancy, fell within that general category of applications.  And that "quasi-judicial" description for

ZBA hearings was favorably cited (post-<u>Halperin</u>) by Suffolk Supreme Justices Thomas Whelan  and Peter H. Meyer, <u>Turturro</u> and <u>Cilla</u>.

The requirement that an "abandonment" must be 100% (unless an adjective such as "substantially" was used in the statutory text) was well established in <u>Matter of Marzella v. Munroe</u> and <u>Town of Islip v. P.B.S. Marina</u>. (See also Patricia E. Salkin, *supra*). The EH ZBA and the Town had already been told by Justice J.J.J. Jones, Jr. that it was supposed to draft codes to clarify what was  not considered  to be "pre-existing" on a property in <u>Fee v. Zoning Bd. of Appeals of the Town of East Hampton</u>, but had ignored that recommendation,

Inspector Glennon, all of the ZBA members and their attorney, Ms. Baldwin, are required to follow these case precedents. They may not have personally known of these cases, but a "reasonable person" in their position would have. Vice Chairman Samuel Kramer, who presided at the ZBA meeting is an attorney, and Ms. Baldwin is as well. FAVC ¶¶ 10).

The members of ZBA are not entitled to assert qualified immunity because they relied upon advice of counsel, that of either ZBA Attorney Baldwin or Town Attorney Sendlenski. As Judge Pettine explained when denying qualified immunity in <u>Ginaitt v. Haronian</u>: "'Advice of counsel', however, would be reduced to an empty shibboleth -- a password to immunity---  if used knowingly to disregard the law.  For reasons already stated, the Board members must be held accountable…."

The ZBA and its members, as well as Building Inspector Glennon, made up definitions for words such as "commercial" and "abandonment" in an egregious manner

that is conscience shocking, while stripping away property rights that the Vanderveer
Family held for over 5 decades. It was wrong to do. They are individually liable to
Vanderveer and are not shielded from liability under the qualified immunity doctrine.

## The Town of East Hampton's Custom, Policy, Local Codes & Procedures

In <u>Zahra v. Town of Southold</u>, (2d Cir. 1995), the Circuit reviewed municipal
liability and found there to be no evidence of a municipal policy that rendered it liable for
the deprivation of constitutionally protected interests. Zahra had complained about a
building inspector's refusal to perform an insulation inspection, a prerequisite step for
Zahra to close up the walls and complete the renovation. Despite Zahra's suspicions
about conspiracies, Judge Wexler found there was no evidence to suggest that high-
ranking town officials were aware of, or intentionally orchestrated, that inspection delay
or a charge for code violations on another one of his properties. Yet <u>Zahra</u> points to many
ways in which a Town could be held responsible for the conduct of others.

In <u>Askins v. Doe</u>, 727 F.3d 248 (2d Cir. 2013), the Second Circuit agreed with
plaintiff-appellant that the case had been incorrectly dismissed against the City. The
panel reasoned that "[M]unicipalities have no immunity from damages flowing from their
constitutional violations", that the municipality's constitutional violation can be based
upon conduct by officials who evade liability due to "qualified immunity", or because
they were not sued, where such municipal officials acted consistent with a municipal
custom or policy that it has either promulgated or sanctioned  and that policy or custom
led to an independent constitutional violation for that sanctioned conduct or the failure to

train. ("In fact, the plaintiff need not sue the individual tortfeasor at all, but may proceed against the municipality.")

In Bellamy v. City of New York, 914 F.3d 747 (2d Cir. 2019), the Second Circuit held that §1983 claims against the city can be based upon the district attorney's office policies and practices because he/she is a high ranking officer of the city. There is no absolute prosecutorial immunity. As Askins v. Doe explained, it is not necessary for (now former) Town Attorney Sendlenski to be sued to hold that the Town liable for his misconduct.

There is no doubt that the Town Board failed to promulgate definitions of "abandonment" and "commercial", and failed to promulgate local laws that would require that all ZBA hearings be conducted as "quasi-judicial" hearings permitting confrontation and cross-examination of the building inspector and neighbors supporting the building inspector. There is no doubt that the Town Board failed to pass laws to permit direct questioning of witnesses in support of the applicant at the ZBA hearing. There is no doubt that Town failed to afford critical training the ZBA members and the Building Inspector about the relevant aspects of the law that might foreseeably arise. There is also no doubt that the Town of East Hampton authorized its own Town Attorney Michael Sendlenski (a decidedly un-neutral attorney to whom District Attorney never delegated any criminal prosecutorial authority) to commence criminal proceedings against Vanderveer for a "change of use" rather than authorizing Town Attorney Sendlenski to commence a (civil) declaratory judgment action in Supreme Court to obtain a judicial determination after a  full opportunity for pre-trial discovery.

Therefore, the Town is financially liable to Vanderveer for compensatory damages including emotional distress as well as all of the monies that he paid his attorneys to assist him in presenting his application to the Building Inspector, the ZBA and the Supreme Court, in connection with a procedure that is constitutionally infirm and a truly a sham.

## Conclusion

For all of the foregoing reasons, and because Defendants' counsel appeared in Court on September 4th without any authority to make any cooperative agreement not to commence other criminal prosecutions under the Town's local codes, Plaintiff moves the Court for a preliminary injunction *pendente lite* because it is consistent with Fed. R. Civ. P. 1. It would be the safest, surest, way of minimizing future adverse consequences of the unconstitutional "taking" and other constitutional violations caused by the intentional, deliberate and pre-meditated actions of Defendants. The true purpose of Knick is fulfilled by the imposition of a preliminary injunction under these circumstances, where state courts proceed very slowly, and an important constitutional right is involved.

October 8, 2019
                                Respectfully submitted
                                        /s/
                                Patricia Weiss, Esq.
                                78 Main Street – Suite 14
                                Post Office Box 751
                                Sag Harbor, NY 11963-0019
                                Telephone (631) 725-4486
                                Facsimile (631) 725-0295
                                PWESQSAG@AOL.COM