UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
DONALD A. VANDERVEER

               Plaintiff,

    -against-

ZONING BOARD OF APPEALS,
TOWN OF EAST HAMPTON et al.
           Defendants.

------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**

Case No. 2:19-cv-3833-FB-CLP

*Appearances:*
*For the Plaintiff*:
PATRICIA A. WEISS, ESQ.
78 Main St., Suite 14
Sag Harbor, NY 11963

*For the Defendants*:
SCOTT J. KREPPEIN
DEVITT SPELLMAN BARRETT, LLP
50 Route 111, Suite 314
Smithtown, NY 11787

**BLOCK, Senior District Judge:**

     Donald Vanderveer alleges that the Town of East Hampton ("the Town"), its

Zoning Board of Appeals ("ZBA") and several Town officials violated the

Takings, Due Process and Equal Protection Clauses when they denied his

application for recognition of his nonconforming use.[1] The Town moves to dismiss

Vanderveer's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

---

[1] The Town officials are the ZBA's five members, Principal Building Inspector
Ann Glennon and Assistant Town Attorney Elizabeth Baldwin.

while Vanderveer cross-moves for a preliminary injunction. On November 17, 2020, the Court heard oral argument on both motions. For the reasons below, the Town's Rule 12(b)(6) motion is granted, Vanderveer's motion for a preliminary injunction denied, and this case dismissed.[2]

## I.     Background

All facts referenced in this decision are drawn from the Complaint, its attachments and judicially noticeable records of the New York state courts and the Town's ZBA.

The Vanderveer family owns three parcels of land in the vicinity of East Hampton, New York, including one located at 580 Three Mile Harbor Hog Creek Highway ("the Property"). Two of these parcels of land are "low lying" properties, on which the Vanderveers built a commercial marina and a residential home. The third (the Property) is a residentially zoned 4-acre lot containing a barn. The Vanderveers acquired the Property in 1949, eight years before the enactment of the Town's first zoning ordinance. Vanderveer uses the Property—which he inherited

---

[2] The Court rejects the Town's alternate 12(b)(1) theory, which asks it to abstain from ruling on the constitutional questions in Vanderveer's complaint. *See* ECF No. 33, Ex. 2 at 28-29. Although federal courts do not sit as "zoning boards of appeal to review nonconstitutional land use determinations," they routinely weigh in "when a landowner's constitutional rights are infringed by local zoning actions." *Sullivan v. Town of Salem*, 805 F.2d 81, 81 (2d Cir. 1986) (collecting cases involving constitutional claims and land use).

from his mother—to store items for his friends and for himself. He uses some of

the stored items at his commercial marina. Since 2012, Vanderveer has leased

space on the Property to a landscaping company for $1,000 per month. Since at

least 2010, the Suffolk County Tax Assessor has used Code 440, "Storage,

Warehouse," to describe the Property. ECF No. 13, Ex. 1.

In June of 2015, the Town filed a misdemeanor information, accusing

Vanderveer of violating the Town zoning ordinance. He contested the charges but

was convicted on several counts, including Count 2, which alleged that he

unlawfully changed the use of the Property from residential to commercial. In July

of 2017, Vanderveer applied to the Town Building Inspector (Defendant Ann

Glennon) for a "determination that the use of the Property for indoor and outdoor

storage is a legally preexisting nonconforming use." ECF No. 13, Ex. 3. In support

of this application, Vanderveer submitted (1) many years of tax records; (2) a letter

dated December 15, 1954, which designates the Property's only structure a "barn"

for tax purposes; (3) several affidavits; and (4) aerial photographs of the Property.

In addition, the Building Inspector considered letters submitted by some of

Vanderveer's neighbors in opposition to his applications, legal arguments made by

counsel his neighbors had retained, and aerial photos which they claimed showed

the absence of commercial use between 1957 and 2010.

3

In November of 2017, the Building Inspector wrote a letter to Vanderveer, which states: "It is my opinion that there was no evidence of a pre-existing outdoor storage use on [the Property]. The [Property] does have evidence of a pre-existing, non-conforming barn. . . but that does not change the pre-existing residential use of the [Property]." ECF No. 13, Ex. 5. Vanderveer appealed to the ZBA, which adopted the Building Inspector's determination after a public hearing. The ZBA found that (1) Vanderveer did not provide adequate proof that the Property had a nonconforming use when the zoning ordinance was adopted in 1957; and (2) even if such a use had existed, Vanderveer abandoned it by leaving the Property vacant for many decades; and (3) even if Vanderveer had continually used the Property for commercial storage, his decision to rent space to a landscaping company terminated that use as a matter of law. ECF No. 33, Ex. 4 at 3-7. The ZBA did not, however, decide whether the barn on the Property could be used for indoor storage.

Judge Leis of the Suffolk County Supreme Court affirmed the ZBA's decision on Article 78 Review. In a detailed bench ruling, Judge Leis rejected Vanderveer's contention that he was "denied a constitutionally sufficient opportunity to be heard. . . as he was not permitted to question adverse witnesses nor his witnesses." ECF No. 33, Ex. 11 at 3. He reasoned that, because land-use agencies are "quasi-legislative, quasi-administrative bodies," the hearings they conduct "are informational in nature and do not involve receiving sworn

4

testimony" or require "the cross examination of witnesses." *Id.* at 4 (*citing Halperin v. City of New Rochelle*, 809 N.Y.S. 2d 98, 103-04 (2d Dept. 2005)). He also found the evidence in the record sufficient to support the ZBA's findings, although he stated that he was "bothered" by the Town's failure to provide a clear definition of the term "commercial use." *Id.*

## II. Legal Standard

To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, when taken as true, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "In ruling on a 12(b)(6) motion ... a court may consider the complaint as well as any written instrument attached to [the complaint] as well as any statements or documents incorporated in it by reference. ... Moreover, on a motion to dismiss, a court may consider matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal citations and quotations omitted).

### III. Discussion

Vanderveer alleges that (1) the denial of his application resulted in an unconstitutional taking; (2) the Town, ZBA, and state court deprived him of constitutional due process by acting without jurisdiction and refusing to allow cross-examination at a ZBA hearing; (3) the Town violated the Equal Protection Clause by adjudicating his application in a discriminatory manner; (4) the Town deliberately failed to train its personnel not to violate the constitution and (5) as a matter of substantive due process, portions of the Town zoning law are unconstitutionally vague. The Court considers each of these claims in turn.

### A. Takings Claim

The Takings Clause of the Fifth Amendment provides that private property "shall [not] be taken for public use, without just compensation." U.S. Const., Amend. V. Under the Takings Clause, the government must compensate a landowner if it effects a "permanent physical occupation" of his property, or if a regulatory action forces him to "sacrifice *all* economically beneficial uses in the name of the common good." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis in original). In rare cases, government action that merely "impede[s] the use of property without depriving the owner of all beneficial use" may constitute a regulatory taking "based on a complex of factors" enunciated

in *Penn Central Transp. Co. v. City of New York*, "including [1] the regulation's economic effect on the landowner, [2] the extent to which the regulation interferes with reasonable investment-backed expectations; and [3] the character of the government action." *Murr v. Wisconsin*, 137 S.Ct. 1933, 1943 (2017) (citing *Penn Cent. Transp. Co.*, 438 U.S. 104, 124 (1978)).

Vanderveer does not claim that the Town's denial of his application resulted in a "physical occupation of his property," nor can he plausibly argue that a four acre residentially zoned lot containing a barn has no "economically beneficial use." *See Murr*, 137 S.Ct. at 1949 (finding no "compensable taking" where a landowner "can use the property for residential purposes"); *Palazzolo v. Rhode Island*, 533 U.S. 606, 631 (2001) ("A regulation permitting a landowner to build a substantial residence. . . does not leave the property 'economically idle'"). Consequently, Vanderveer can only succeed on his Takings claim if he establishes a "non-categorical [regulatory] taking under the. . .Supreme Court's framework in *Penn Central*." *Lebanon Valley Auto Racing Corp. v. Cuomo*, 2020 WL 4596921, at *7 (N.D.N.Y. Aug. 11, 2020) (internal citations omitted).

The first *Penn Central* factor—"economic effect on the landowner"—is also the one on which Vanderveer makes his strongest showing. In the Complaint, Vanderveer alleges that the Town's denial of his application deprived him of "the ability to store and warehouse his own chattels and property needed for his marina

business. . . [and resulted in the] loss of financial compensation derived from warehousing others' chattels."[3] ECF No. 13 at 20-21. Read together with the record in the light most favorable to Vanderveer, these allegations suggest that the Town's refusal to allow storage on the Property costs Vanderveer $12,000 per year in rent plus an unspecified amount in costs associated with commercial storage. This is a real economic impact. Nonetheless, because Vanderveer does not allege that the Town's denial of his application "effectively prevented [him] from making any economic use of the [Property]," this factor bears less weight in the Court's analysis than it might otherwise. *Cf. Sherman v. Town of Chester*, 752 F.3d 554, 565 (2d Cir. 2014) (weighing "economic effect" factor in favor of a taking where a town planning board "effectively prevented" a developer from developing a vacant property for almost 10 years). On the contrary, the record shows and the parties conceded at oral argument that Vanderveer may still construct a residence on the

---

[3] Vanderveer further alleges that the denial of his application would expose him to "repeated. . . charges for town violations (misdemeanors), which can lead to fines and imprisonment in the county jail." ECF No. 13 at 21. However, these effects are remote from the regulatory takings analysis, which focuses on the harm *complying with a regulation* would cause to a landowner's property, not the harm that might result from noncompliance. *See, e.g.*, *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 498 (1987) (regulation that caused mining corporation to lose 2% of its raw materials was not a regulatory taking); *Elmsford Apartment Associates, LLC v. Cuomo*, 2020 WL 3498456, at *9 (S.D.N.Y. Jun. 29, 2020) (regulation that prohibited collection of rent from an unspecified percentage of tenants on a property was not a regulatory taking).

Property, a use the Supreme Court has found to be economically significant.[4] *See Murr*, 137 S.Ct. at 1949 (no "compensable taking" where a landowner "can use the property for residential purposes"); *Palazzolo*, 533 U.S. at 631 ("A regulation permitting a landowner to build a substantial residence. . . does not leave the property 'economically idle'").

By contrast, the second *Penn Central* factor—"interfere[nce] with reasonable, investment-backed expectations"—strongly supports a finding that no taking occurred. Vanderveer does not allege that he invested time or money in the Property and provides no caselaw to support his claim that there is no difference between an "inheritance backed expectation" and an "investment-backed expectation." *See* ECF No. 34 at 11. Moreover, even if Vanderveer is correct that the common-law concept of tacking—which ordinarily applies in the context of adverse possession—somehow permits him to take credit for the investments his ancestors made in the Property, he has not alleged that his ancestors invested in the Property. Vanderveer therefore fails to establish any "investment backed expectation" related to the Property, let alone one that transforms the Town's

---

[4] Because "[the] use of the barn on the [Property] for commercial indoor storage [was] not. . .before the [ZBA]," the ZBA's ruling affects the use of the Property for outdoor commercial storage *only*. ECF No. 13, Ex. 2 at 2 *see also* ECF No. 13, Ex. 5 (explaining that the Property's "pre-existing, non-conforming barn. . . would be able to exist" under the current zoning scheme). The Property therefore retains at least some economic value as a storage site.

actions into a regulatory taking. *Cf. Sherman*, 752 F.3d at 565 (developer who invested 5.5 million dollars to build a residential complex in a residentially zoned area had a "reasonable, investment-backed expectation").

Finally, the "character of [the Town's] action" supports a finding that no taking occurred. In *Penn Central*, the Supreme Court explained that a taking "may more readily be found when the interference with property can be characterized as a physical invasion. . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common-good." *Penn Central*, 438 U.S. at 124. Both Vanderveer and the Town agree that a zoning law which eliminates nonconforming uses is a public program to promote the common-good. *Compare* ECF No. 13 at 35 (acknowledging valid public purpose of alleged taking) *with* ECF No. 33, Ex. 2 at 12 (arguing that "public policy" favors the elimination of nonconforming uses); *see also Matter of 550 Halstead Corp.*, 1 N.Y.3d 561, 561 (N.Y. 2003) ("Because nonconforming uses are viewed as detrimental to zoning schemes, public policy favors their reasonable restriction and eventual elimination"). Accordingly, the Court finds that the Town and ZBA's adjudication of Vanderveer's application was part of a "program. . . to promote the common-good." *Penn Central*, 438 U.S. at 123. Its "character" was not that of a "physical invasion," so this factor supports a finding that no regulatory taking occurred.

For the foregoing reasons, although Vanderveer plausibly alleges economic

harm, he has not pleaded facts sufficient to establish a regulatory taking.[5]

## B. Constitutional Due Process Claims

Vanderveer next argues that the Town and ZBA denied him substantive and

procedural due process by, *inter alia*, acting without jurisdiction, refusing to allow

cross examination before the ZBA and adjudicating his application according to

arbitrary standards, ECF No. 13 at 40-42. In order to state a claim for violation of

his due process rights (either substantive or procedural), Vanderveer must first

establish the existence of a valid property or liberty interest. *See Zahra v. Town of*

*Southold,* 48 F.3d 674, 680 (2d Cir. 1995) ("To state a substantive due process

claim, a party must first establish that he had a valid property interest in a benefit

that was entitled to constitutional protection at the time he was deprived of [it]");

*Galgiardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) ("The deprivation

of a procedural right to be heard, however, is not actionable when there is no

---

[5] The Supreme Court's holding in *Knick v. Township of Scott, Pennsylvania* does
not alter this conclusion. 139 S. Ct. 2162, 2162 (2019). Despite Vanderveer's
suggestion to the contrary, *Knick* did not "broaden the term takings" in any way
relevant to this case. ECF No. 34 at 12. As the trial court opinion in *Knick* makes
clear, that case involved a physical taking. *See Knick v. Township*, 2016 WL
4701549, at *4 (M.D. Pa. Sept. 8, 2016) ("Because Plaintiff's [Second Amended
Complaint] alleges a physical taking, this Court need not review the elements of a
regulatory taking") (*rev'd on other grounds*, *Knick v. Township of Scott,
Pennsylvania*, 139 S.Ct. 2162, 2162 (2019)). By contrast, the present case involves
a *regulatory* taking.

protected right at stake"). Here, Vanderveer asserts protected property interests in "the continuing commercial use of [the Property] for storage and warehouse" and "a certificate of occupancy to reflect such a commercial use." ECF No. 34 at 19.[6] The Town responds that Vanderveer has no "vested right" to an outdoor storage use under New York law and therefore no protected interest. *See* ECF No. 33, Ex. 2 at 8.

Vanderveer adequately alleges a property interest in the continued use of the Property for outdoor storage. In determining whether a viable property interest has been established for purposes of due process analysis, the Court looks to "existing rules or understandings that stem from an independent source such as state law." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir. 1998). Under New York law, a landowner has a protectable "vested interest" in a nonconforming use if "enforcement of the [zoning] ordinance would, by rendering valueless substantial improvements *or businesses* built up over the years, cause serious financial harm to the property owner." *People v. Miller*, 304 N.Y. 105, 108-09

---

[6] Vanderveer does not have a viable "liberty interest" in the ZBA's recognition of his nonconforming use. Although Vanderveer alleges that the ZBA's ruling harms his marina business, he does not demonstrate that it "effectively prohibits [him] from engaging in [his] profession or pursuing any job in a given field." *Cityspec, Inc. v. Smith*, 617 F.Supp.2d 161, 169 (E.D.N.Y. 2009). At most, the ZBA ruling is a form of regulation that impacts Vanderveer's marina without depriving him of the ability to earn a living. *See id.* ("[An] unconstitutional deprivation does not occur any time the State regulates a profession").

(N.Y. 1952) (emphasis added). The Complaint sufficiently alleges that (1) Vanderveer's has a business of renting the Property to third parties; (2) that business will be rendered "valueless" if the Town fails to acknowledge his nonconforming use; and (3) he will suffer financial harm from the loss of his rental business. It therefore alleges a protectable property interest.

## 1. Procedural Due Process

Because Vanderveer sufficiently alleges a property interest in his nonconforming use, procedural due process requires that the Town provide "an opportunity to be heard in a meaningful manner at a meaningful time" before withdrawing its recognition of that use. *Kaur v. New York State Urban Development Corp.*, 15 N.Y. 3d 235, 260 (N.Y. 2010) (citing *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). Vanderveer received (1) an opportunity to present evidence to the Building Inspector as required in East Hampton Town Code § 255-1-240(E); (2) a hearing before the ZBA where he and others had the opportunity to speak and present evidence; and (3) an Article 78 hearing before the Suffolk County Supreme Court. Nonetheless, he argues that he was denied a meaningful opportunity to be heard because: (1) the ZBA lacked jurisdiction to review the Town Building Inspector's "opinion," and (2) cross-examination was not permitted at the ZBA hearing.

13

As for the first argument, East Hampton Town Code § 255-1-40(E) states that "The Building Inspector shall make a determination as to the application [for a nonconforming use]," and § 255-8-30 gives the ZBA jurisdiction to review "applications brought by aggrieved persons from interpretations of provisions of this chapter made by the Building Inspector or for review of other ... determinations made by him." Vanderveer submitted an "application for a determination," the Building Inspector denied it in an "opinion," and the ZBA reviewed the denial. There is no meaningful difference between an "opinion" under § 255-1-40(E) and a "determination" under the same section.

Vanderveer further argues that "he. . . should have been able to cross-examine any person who did any speaking to the ZBA members at the ZBA hearing in May 2018." ECF No. 40 at 2. Under New York law, "the [ZBA's] actions are to be distinguished from quasi-judicial determinations reached upon a hearing involving sworn testimony." *Sasso v. Osgood*, 86 N.Y. 2d 374, 384 n.2 (N.Y. 1995). Thus, "while parties before a quasi-legislative agency*, such as a zoning board*, have a right to be heard, the forum in which they do so is not a quasi-judicial proceeding involving cross-examination of witnesses and the making of a record."[7] *Francello v. Mendoza*, 87 N.Y.S. 3d 361, 363-65 (3d Dept. 2018)

---

[7] *Knight v. Amelkin*, the case on which Vanderveer relies, is not to the contrary. There, the Court of Appeals simply held that when a ZBA performs a "quasi-

14

(internal quotations and citations omitted, emphasis added); *Halperin*, 809 N.Y.S. 2d at 103-04.

Nonetheless, Vanderveer claims that he is entitled to a "judicial proceeding" under the Due Process Clause of the federal Constitution. In evaluating his argument, the Court is guided by the well-known *Matthews v. Eldridge* test for "identification of the specific dictates of due process," which weighs: "[1] the private interest that will be affected by the official action; [2] the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." 424 U.S. at 335 (internal quotations and citations omitted).

The first factor—Vanderveer's private interest—is entitled to little weight. Although Vanderveer has alleged a protected interest in his nonconforming use, it is not a substantial one. As explained above, the elimination of Vanderveer's nonconforming use does not destroy the Property's economic value and leaves Vanderveer able to use the Property for indoor storage. The "vested interest"

---

judicial function," it must "adhere to its own precedent [or] indicate [its] reason for reaching a different result on essentially the same facts." 68 N.Y.2d 975, 977 (N.Y. 1986).

allegedly infringed by the Town's denial of his application is thus Vanderveer's interest in renting the Property for approximately $12,000 per year.[8] ECF No. 13 at 20-21. This interest is not *de minimis*, but it cannot be fairly compared to the interests in welfare benefits, disability benefits or licenses that were at stake in cases like *Goldberg v. Kelly*, 397 U.S. 254, 254 (1970), *Matthews v. Eldridge*, 424 U.S. at 319, and *Bell v. Burson*, 402 U.S. 535, 535 (1971). Accordingly, Vanderveer's "private interest" in the nonconforming use is entitled to relatively little weight.

By contrast, the second factor—likelihood of erroneous deprivation and efficacy of additional procedure—weighs decisively against Vanderveer. In a letter submitted to the Court after oral argument, Vanderveer argues that cross examination is required "whenever reliability and credibility are issues." ECF No. 40 at 2. But the record suggests that the ZBA's decision did not rely on the statements of any particular speaker. Rather, the ZBA relied in the first instance, on deficiencies in the documentation Vanderveer provided, and in the second, on a series of "extremely compelling" aerial photographs that "showed an almost cleared property" covered in vegetation, not stored materials. ECF No. 13, Ex. 2 at

---

[8]Because Vanderveer's "vested" property interest in the nonconforming use stems from the "businesses" he allegedly built on the Property, the Court believes the "value" of the nonconforming use is roughly equivalent to the value of the business he would allegedly lose if deprived of the use.

3-4 (noting the absence of documents in the record and discussing "especially persuasive" aerial photographs).

While Vanderveer makes much of Judge Leis's reference to a "horseback rider" whose statements the ZBA *could have* used to support its alternate conclusion that Vanderveer abandoned his nonconforming use, the horseback rider is not mentioned in the ZBA's decision. *Compare* ECF No. 13, Ex. 2 *with* ECF No. 33, Ex. 11. In any event, the Court is not convinced that cross-examination of this horseback rider would substantially reduce the "likelihood of an erroneous deprivation," where (1) the ZBA's decision rests primarily on a finding that Vanderveer failed to submit adequate documentary evidence; and (2) Vanderveer was previously convicted of changing the Property's use *after a trial that permitted cross-examination*.

Moreover, the availability of Article 78 review greatly reduces the likelihood of an erroneous deprivation. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d. Cir. 1988) (rejecting procedural due process challenge where the state courts "[provided] a state forum to review the constitutionality of the defendant's actions"); *Campo v. New York City Employees Retirement System*, 843 F.2d 96, 102-03 (2d Cir. 1988) (holding that an Article 78 proceeding satisfied the requirements of procedural due process).

Finally, the public interest in zoning enforcement is significant. As stated above, "nonconforming uses are viewed as detrimental to zoning schemes, [and] public policy favors their reasonable restriction and eventual elimination." *Matter of 550 Halstead Corp.*, 1 N.Y.3d at 561. Additionally, state guidance documents identify the risk that a large public hearing will "get out of hand and degenerate into a name-calling session" as a reason to "limit" the right of cross-examination at zoning board hearings. New York State Division of Local Government Services, *Zoning Boards of Appeals*: *James A. Coon Local Government Technical Series*, 1, 32 (2015). The state therefore claims a secondary interest in conducting zoning board hearings in a relatively informal manner.

"[Due] process in the administrative setting does not always require application of the judicial model" and is less likely to do so in the absence of affirmative state action. *Dixon v. Love*, 431 U.S. 105, 115 (1977). Here, although the outcome of the ZBA hearing affects Vanderveer's property interest in his rental business, the hearing was not held for the purpose of extinguishing that interest. *Cf. Kelly*, 397 U.S. at 254 (revocation of welfare benefits); *Eldridge*, 424 U.S. at 319 (revocation of social security benefits *Burson*, 402 U.S. at 535 (revocation of driver's license); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (town-initiated proceeding to revoke or modify special use permit). Rather,

the process that led to this action began when Vanderveer sought a hearing for the purpose of clarifying the extent of his interest in the Property.

Vanderveer is not like a license-holder facing a revocation proceeding that could result in the complete destruction of his protected interest. His procedural due process claim is without merit.

### 3. Substantive Due Process

Vanderveer also makes a substantive due process argument that the ZBA employed vague and arbitrary definitions of the terms "commercial" and "change in use" when it found that "storage on the Property was not commercial in nature" or, in the alternative, that the use changed to "Service, Commercial." ECF No. 13 at 41, 55; *see also* ECF No. 13, Ex. 2. He alleges that the ZBA should have found that his use of the Property to store items for his marina was a preexisting "commercial use," which had not been discontinued or changed since 1949. ECF No. 13 at 30. Like the Suffolk County Supreme Court, this Court is troubled by the lack of an explicit definition of the term "commercial use" in the Town Code. *See* ECF No. 33, Ex. 11. Nonetheless, the absence of this definition does not, by itself, violate Vanderveer's right to substantive due process. Notably, the ZBA found that Vanderveer had abandoned his use of the outdoor space on the Property for any kind of storage, not just "commercial" storage. *See* ECF 13, Ex. 2 at 6 (finding

"aerial photographs [that] depict an almost cleared property" to be "extremely compelling"). *Cf. Cunney v. Board of Trustees of Village of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) (reversing holding that substantive due process was not violated where zoning board had relied solely on unconstitutionally vague term in ordinance). In any event, the ZBA's denial of Vanderveer's application on the theory that Vanderveer "abandoned" all nonconforming use of the Property was not "arbitrary, oppressive or conscience shocking."[9]

## C. Equal Protection Claim

Vanderveer also attempts to establish a "class of one" equal protection claim. "Class of one plaintiffs must show an extremely high degree of similarity between themselves and persons to whom they compare themselves." *Ruston v. Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). In the context of a land-use case, a plaintiff may avoid dismissal by alleging that "properties sufficiently similar to theirs were treated more favorably." *Id.* Here, Vanderveer identifies three properties as possible comparators: 13 Washington Avenue, East Hampton,

---

[9] Vanderveer also argues that the ZBA relied on an unconstitutionally vague definition of "abandonment." ECF No. 13 at 2. That term is explicitly and clearly defined in the Town Code and the ZBA's opinion. ECF No. 13, Ex. 2 at 5-6 (*citing* Town Code § 255-1-40D).

NY; a property adjacent to Vanderveer's; and an unidentified property located in "The Springs" district of East Hampton. ECF No. 13 at 52.

Regardless of whether the Court adopts the "extremely high degree of similarity" standard or the "reasonably similar standard" Vanderveer prefers, these properties are insufficiently similar to Vanderveer's. *Compare Ruston*, 610 F.3d at 59 *with Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019*)* (discussing circuit split in standards applied to "class of one" equal protection claims). As to the 13 Washington property, Vanderveer admits that it is a "commercially zoned property," whereas the Property is residentially zoned. ECF No. 34 at 25. It is therefore hardly surprising that the Town has not objected to the use of that property for commerce. As to the second property, Vanderveer fails to allege that his neighbors ever applied for a determination of nonconforming use. It is therefore impossible to say whether the Town would treat them differently, or whether a rational basis for discrimination would exist. Finally, Vanderveer's allegations regarding the third property are vague and conclusory.

Without a valid comparator, Vanderveer's equal protection claim must be dismissed.

**D. Other Claims**

Because the Court finds no violation of Vanderveer's rights, there is no basis

for an action for failure to train under 42 U.S.C. § 1983, or for entry of a judgment

declaring portions of the Town Code unconstitutional. These claims are dismissed.

**CONCLUSION**

For the foregoing reasons, the Town's motion to dismiss is GRANTED and

Vanderveer's motion for a preliminary injunction is DENIED as moot. The case is

DISMISSED.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 30, 2020